1  CNA COVERAGE LITIGATION GROUP
2  Robert C. Christensen (SBN 151296)
   robert.christensen@cna.com
3  555 Mission Street, Suite 200
4  San Francisco, CA 94105
   (415) 932.7018 (tel)
5  (866) 534.1036 (fax)
6
   Daniel C. Streeter (SBN 229010)
7  Daniel.streeter@cna.com
8  2 Park Plaza, Suite 400
   Irvine, CA 92614
9  (949) 399.4945 (tel)
10 (949) 788.8980 (fax)
11 *Attorneys for Defendants Valley Forge Insurance Company and The Continental
   Insurance Company*
12
13            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15 VALLEY FORGE INSURANCE COMPANY and THE CONTINENTAL INSURANCE COMPANY, | Case No. 2:22-cv-3226 |
| 16 | |
| 17              Plaintiffs, | **COMPLAINT FOR DECLARATORY AND MONEY JUDGMENT** |
| 18      v. | |
| 19 MINDBODY, INC.; CLASSPASS, LLC; CLASSPASS, INC.; PAYAL KADAKIA; and FRITZ LANMAN, | |
| 20 | |
| 21              Defendants. | |

22
23
24
25
26
27
28

Plaintiffs Valley Forge Insurance Company ("VFIC") and The Continental Insurance Company ("Continental" and, together with VFIC, the "CNA Insurers") bring their Complaint for Declaratory and Money Judgment in this Court pursuant to 28 U.S.C. § 1332(a). The CNA Insurers allege on knowledge, information, and belief as follows:

## NATURE OF THE ACTION

1.     The CNA Insurers file this action to obtain a judicial determination and declaration of the parties' respective rights and obligations under VFIC Commercial General Liability Policy No. 6079016608 (the "Primary Policy") and Continental Excess and Umbrella Policy No. CUE 6079016642 (the "Excess/Umbrella Policy" and, together with the Primary Policy, the "Policies") issued to MindBody, Inc. ("MindBody") for the **policy period** of October 1, 2021 to October 1, 2022.[1]   The Policies add ClassPass, LLC as a **Named Insured** via endorsement, effective October 15, 2021. A true and correct copy of the Primary Policy is attached hereto as Exhibit A. A true and correct copy of the Excess/Umbrella Policy (except for the application) is attached hereto as Exhibit B.

2.     ClassPass, Inc.; ClassPass, LLC; Fritz Lanman; and Payal Kadakia (collectively, "Defendants") are defendants in a putative class action complaint, captioned *Tipsy Nail Club LLC, et al. v. ClassPass, Inc., et al.*, No. 21 Civ. 8662 (AT) (SN), which is currently pending in the United States District Court for the Southern District of New York (the "Lawsuit"). A true and correct copy of the operative First Amended Class Action Complaint filed in the Lawsuit is attached hereto as Exhibit C.

3.     Defendants tendered the Lawsuit to the CNA Insurers for coverage under the Policies. On May 10, 2022, the CNA Insurers sent its coverage position to the Defendants. A true and correct copy of the May 10, 2022 letter is attached hereto as Exhibit D.

---

[1] Terms in bold are defined in the Policies and carry the same meaning here.

4.      The CNA Insurers advised the Defendants that ClassPass, Inc., Lanman, and Kadakia do not constitute insureds under the Policies.  Although the CNA Insurers believe there is no coverage under the Policies for the Lawsuit, VFIC has agreed to provide a defense to the insured, ClassPass, LLC, subject to a full and complete reservation of rights, including but not limited to the right to withdraw from that defense and to seek reimbursement of all amounts paid by VFIC if it is determined that no coverage is available under the Policies for the Lawsuit.

5.      An actual, ripe, and justiciable controversy has arisen between the parties regarding their respective rights and obligations under the Policies in connection with the Lawsuit.

6.      In particular, the CNA Insurers seek a determination and declaration by this Court that (i) ClassPass, Inc., Lanman, and Kadakia are not entitled to coverage under the Policies because they do not constitute insureds; (ii) the allegations in the Lawsuit do not trigger the Primary Policy's insuring agreement because they do not potentially seek damages for **personal and advertising injury**, and (iii) even if the insuring agreement is triggered, several exclusions in the Primary Policy apply to preclude coverage.  Because the Policies do not provide coverage for the Lawsuit, VFIC seeks declaratory relief and a money judgment in this action for reimbursement of defense costs that it has expended in connection with providing ClassPass, LLC a defense in the Lawsuit.

## PARTIES

7.      Plaintiff VFIC is a corporation organized and existing under the laws of the State of Pennsylvania and maintains its principal place of business in Chicago, Illinois, and therefore is a citizen of Pennsylvania and Illinois.  VFIC legally transacts insurance business in the State of California and within the geographical jurisdiction of this Court.

8.     Plaintiff Continental is a corporation organized and existing under the laws of the State of Pennsylvania and maintains its principal place of business in Chicago, Illinois, and therefore is a citizen of Pennsylvania and Illinois.  Continental legally transacts insurance business in the State of California and within the geographical jurisdiction of this Court.

9.     Defendant MindBody is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business in San Luis Obispo, California.  MindBody is therefore a citizen of Delaware and California.

10.     Defendant ClassPass, LLC is a limited liability company.  ClassPass, LLC's sole member is Mindbody, so ClassPass LLC's citizenship is the same as Mindbody's.  Therefore, ClassPass, LLC is a citizen of Delaware and California.

11.     Defendant ClassPass, Inc. no longer exists following a merger with MindBody in which the surviving entity was ClassPass, LLC.  Defendant ClassPass, Inc., was a corporation organized and existing under the laws of the Delaware and maintained its principal place of business in New York, New York.  ClassPass, Inc. was therefore a citizen of Delaware and New York.

12.     Defendant Fritz Lanman is the current President and former CEO and Executive Chairman of ClassPass.  Lanman is a citizen of Montana.

13.     Defendant Payal Kadakia is the founder and former CEO and Executive Chairman of ClassPass.  Kadakia is a citizen of New York.

## **JURISDICTION AND VENUE**

14.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, for the purposes of determining a question of actual controversy between the parties as described more fully below.  VFIC also seeks a money judgment.

15.     This action currently is ripe for adjudication.

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).   Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this insurance coverage dispute occurred in this judicial district.

## FACTUAL BACKGROUND

### A. **ClassPass and MindBody Merger**

18.     On October 15, 2021, MindBody acquired ClassPass in a triangular merger.

19.     As part of the acquisition, ClassPass, Inc. was merged out of existence and the surviving entity was renamed ClassPass, LLC, which is a wholly-owned subsidiary of MindBody.

### B. **VFIC Primary Policy**

20.     VFIC issued the Primary Policy to MindBody for the **policy period** of October 1, 2021 to October 1, 2022.  Ex. A, Primary Policy, Declarations.

21.     At the request of MindBody through its agent, VFIC issued an endorsement to the Primary Policy that adds the surviving entity following the merger, ClassPass, LLC, as a **Named Insured**, effective October 15, 2021.  Ex. A, Primary Policy, End. No. 38.

22.     "Throughout [the Primary Policy] the words "you" and "your" refer to the **Named Insured** shown in the Declarations, and any other person or organization qualifying as a **Named Insured** . . . .   The words "we," "us" and "our" refer to [VFIC]."  Ex. A, Primary Policy, Commercial General Liability Coverage Part, p. 1.

23.     With respect to coverage for limited liability companies ("LLCs"), the Primary Policy provides that an LLC's "members are also **Insureds**, but only with respect to the conduct of [the **Named Insured's**] business," and its "managers are

**Insureds**, but only with respect to their duties as [the **Named Insured's**] managers." Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section II.1.c.

24.     The Primary Policy has a $1 million Each Occurrence limit, a $1 million personal and advertising injury limit, and a $2 million general aggregate limit.  Ex. A, Primary Policy, Declarations.

25.     The Primary Policy provides:

[VFIC] will pay those sums that the **Insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies.  We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**.  However, we will have no duty to defend the **Insured** against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.

Ex. A, Primary Policy, Commercial General Liability Coverage Part, Coverage B.

26.     **Personal and advertising injury** means:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    f.  The use of another's advertising idea in your **advertisement**;

g. Infringing upon another's copyright or slogan in your **advertisement**; [or]

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section V.14, as amended by End. Nos. 6 (adding discrimination or humiliation coverage), 17 (deleting coverage for oral or written publication that violates a person's right of privacy), and 19 (altering infringement coverage).

27. The Primary Policy defines an **advertisement** as:

a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. . . .  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement."

Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section V.1.

28. The Primary Policy includes the following **personal and advertising injury** exclusions:

c. **Material Published Prior to Policy Period**
   **Personal and advertising injury** arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the **policy period**.

i. **Infringement or Violation of Intellectual Property Rights or Laws**

**Personal and advertising injury** arising out of infringement or violation of the following rights or laws:

    (a)    patent

    (b)    trade secret or other confidential or proprietary non-personal information;

    (c)    trademark, certification mark, service mark, collective mark, trade name, or other designation of origin or authenticity;

    (d)    copyright; or

    (e)    any other intellectual property right or legally protected expression, including but not limited to another's idea, slogan, trade dress, style of doing business, or unauthorized use of another's name or image, or any other intellectual property law, including but not limited to piracy, unfair competition or other similar practices.

This exclusion applies to the entirety of all allegations in any **claim** if the **claim** alleges the infringement or violation of any intellectual property right or law identified above, even if this insurance would otherwise apply to other allegations in the **claim**.  However, this exclusion does not apply if the **claim's** only allegation is copyright or slogan infringement in **Named Insured's advertisement**.

Ex. A, Primary Policy, Commercial General Liability Coverage Part, Coverage B.2., as amended by End. No. 19 (deleting and replacing **Infringement Of Copyright, Patent, Trademark Or Trade Secret** Exclusion with **Infringement or Violation of Intellectual Property Rights or Laws** Exclusion).

C. **Continental Excess/Umbrella Policy**

29.　Continental issued the Excess/Umbrella Policy to MindBody for the **policy period** of October 1, 2021 to October 1, 2022.  Ex. B, Excess/Umbrella Policy, Declarations.

30.　Like with the Primary Policy, at the request of MindBody through its agent, Continental issued an endorsement to the Excess/Umbrella Policy that adds the surviving entity following the merger, ClassPass, LLC, as a **Named Insured** via endorsement, effective October 15, 2021.  Ex. B, Excess/Umbrella Policy, End. No. 13.

31.　The Excess/Umbrella Policy generally follows form to the Primary Policy under Coverage A – Excess Follow Form Liability.  Ex. B, Excess/Umbrella Policy, Coverage A.

32.　The Excess/Umbrella Policy states that Continental "will pay on behalf of the **Insured** those **damages** in excess of the" underlying limits in the Primary Policy.  Ex. B, Excess/Umbrella Policy, Section I.A. & Declarations.

33.　The Excess/Umbrella Policy has a $20 million Each **Incident Limit** and aggregate limit.  Ex. B, Excess/Umbrella Policy, Declarations.

34.　The Excess/Umbrella Policy also provides that "[a]ny person or organization that is a Named Insured under the provisions of **underlying insurance** shall be considered a **Named Insured** under Coverage A Excess Follow Form Liability."  Ex. B, Excess/Umbrella Policy, End. No. 8.

35.　The Excess/Umbrella Policy affords coverage in accordance with the Excess/Umbrella's terms and conditions under Coverage B – Umbrella Liability, and Endorsement No. 6 excludes coverage for "any actual or alleged **personal advertising injury**."

1

**D. <u>The Lawsuit</u>**

2    36.    On October 22, 2021, Tipsy Nail Club, LLC filed a putative Class Action

3    Complaint against ClassPass, Inc., its CEO Fritz Lanman and its Founder and

4    Executive Chairman Payal Kadakia in the United States District Court for the

5    Southern District of New York.

6    37.    On November 23, 2021, Tipsy Nail Club, LLC, and additional businesses

7    (collectively, "Underlying Plaintiffs"), on behalf of themselves and all others similarly

8    situated, filed a putative First Amended Class Action Complaint (the "FAC") against

9    ClassPass, Inc.; its CEO, Fritz Lanman; its Founder and Executive Chairman, Payal

10    Kadakia; and ClassPass, LLC (collectively, "ClassPass Defendants").

11    38.    The FAC alleges that ClassPass subscribers use the "ClassPass Partner

12    Network" to purchase and book services with businesses within the ClassPass Partner

13    Network.    For example, a ClassPass customer can purchase "credits" through

14    ClassPass and then use those credits to book through ClassPass a fitness class or

15    beauty appointment with the businesses listed on the ClassPass website or app, rather

16    than booking the class or appointment through the business directly.

17    39.    The Underlying Plaintiffs assert that "[s]ince its inception" in 2012,

18    ClassPass has included fake listings of real businesses, including "health clubs, beauty

19    salons, and massage parlors comprising the putative classes . . . that never partnered

20    with it and/or do not even wish to be affiliated with ClassPass." Ex. C, ¶ 3, 85, 102.

21    40.    The Underlying Plaintiffs assert that these allegedly false listings include

22    generic descriptions of the businesses, stock photos, list of services and class

23    schedules or appointment times that do not correspond to the businesses' actual

24    services or availability.  Ex. C, ¶ 4.

25    41.    Following the generic description of the businesses, ClassPass also

26    allegedly copies verbatim brief descriptions of the businesses from their own websites

27    and substitutes words like "we" and "us" to "they" and "them."  Ex. C ¶ 112.

28

42.     Based on the generic descriptions, the Underlying Plaintiffs determined that approximately one-third, or nearly 7,500, of ClassPass's business listings "fit the pattern of those listed without permission."  Ex. C, ¶ 8, 118.

43.     According to the Underlying Plaintiffs, their businesses are among those listed on ClassPass's website and app without permission.

44.     The Underlying Plaintiffs assert that the "[ClassPass] Defendants have engaged in a uniform course of conduct as to the advertising of its ClassPass Partner Network that unfairly and falsely affiliates [the Underlying] Plaintiffs and class members with ClassPass."  Ex. C, ¶ 13.

45.     The Underlying Plaintiffs allege that ClassPass's conduct in listing the businesses without their permission amounts to "false affiliation, reverse passing off, false advertising, and unfair competition."  Ex. C, ¶ 15.

46.     Further, "[the Underlying] Plaintiffs are concerned that ClassPass's listing and fake service schedule will injure their reputations, including, among other concerns, by, among other harms, (1) affiliating them with a company that takes advantage of its customers and engages in unethical billing practices, (2) burdening them with upset customers, negative reviews and costing them money, and (3) confusing their existing or potential customers."  Ex. C, ¶ 180.

47.     The FAC seeks certification of the following Nationwide Class:

> All persons or entities in the United States that ClassPass has listed on its website and/or app through the creation of a business landing page, and that did not agree to be a ClassPass partner, and/or such subclasses as the Court may deem appropriate.

Ex. C, ¶ 209.

48.     The FAC seeks certification of similar subclasses in New Jersey, Connecticut, Utah, Missouri, Colorado, and California.  Ex. C, ¶¶ 210–15.

49.     The FAC asserts the following causes of action: (1) Unfair Competition, False Affiliation and Reverse Passing Off in Violation of Section 43 of the Lanham

Act, 15 U.S.C. § 1125(a) (On Behalf of Plaintiffs and the Nationwide Class); (2) False Advertising in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (On Behalf of Plaintiffs and the Nationwide Class); (3) Violations of the New York Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349 (On Behalf of Plaintiffs and the Nationwide Class); (4) False Advertising in Violation of N.Y. Gen. Bus. Law § 350 (On Behalf of Plaintiffs and the Nationwide Class); (5) Common Law Unfair Competition (On Behalf of Plaintiffs and the Nationwide Class); (6) Violation of the New Jersey Unfair Competition Act, N.J.S.A. § 56:4-1 (On Behalf of Plaintiffs Leeah Nails and Salon Phoenix and the New Jersey Class); (7) Violation of the Connecticut Unfair Trade Practices Act, Gen. Stat. §§ 42-110a, *et seq.* (On Behalf of Plaintiff Rapha Massage and the Connecticut Class); (8) Violation of the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-103(a), *et seq.* (On Behalf of Plaintiff Midvalley Massage and the Utah Class); (9) Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.* (On Behalf of Plaintiff Salon Goldyn and the Colorado Class); and (10) Violation of the California Unfair Competition Law, Business & Professions Code, § 17200, *et seq.* (On behalf of Plaintiff Hairroin Salon and the California Class).

50. The Underlying Plaintiffs pray for the following relief: certification of the Classes, appointing the Underlying Plaintiffs as representatives of the Classes, and designating Underlying Plaintiffs' counsel as Class Counsel; compensatory damages and actual damages, trebled; actual and statutory damages; punitive damages; civil penalties; declaratory and equitable relief, including restitution and disgorgement; injunctive relief; costs and attorneys' fees; pre- and post-judgment interest; and other relief as the Court deems just and proper.

## **COUNT I**

### **For a Declaration that ClassPass, Inc. is not insured under the Policies**

51. The CNA Insurers reallege and incorporate by reference Paragraphs 1-50

1 | of this Complaint as if fully set forth herein.

2 |     52. ClassPass, Inc. ceased to exist following MindBody's merger with

3 | ClassPass.

4 |     53. ClassPass, Inc. is not an additional insured added by endorsement under

5 | the Policies.

6 |     54. ClassPass, Inc. is therefore not entitled to coverage under the Policies.

7 | **COUNT II**

8 | **For a Declaration that Payal Kadakia is not insured under the Policies**

9 |     55. The CNA Insurers reallege and incorporate by reference Paragraphs 1-50

10 | of this Complaint as if fully set forth herein.

11 |     56. Kadakia is not an additional insured added by endorsement under the

12 | Policies.

13 |     57. Kadakia is therefore not entitled to coverage under the Policies.

14 | **COUNT III**

15 | **For a Declaration that Fritz Lanman is not insured under the Policies**

16 |     58. The CNA Insurers reallege and incorporate by reference Paragraphs 1-50

17 | of this Complaint as if fully set forth herein.

18 |     59. Lanman is not an additional insured added by endorsement under the

19 | Policies.

20 |     60. Lanman is therefore not entitled to coverage under the Policies.

21 | **COUNT IV**

22 | **For a Declaration that there is no coverage for the Lawsuit because it does not**

23 | **allege any potentially covered personal and advertising injury**

24 |     61. The CNA Insurers reallege and incorporate by reference Paragraphs 1-50

25 | of this Complaint as if fully set forth herein.

26 |     62. As discussed in paragraph 26, the offenses defined as **personal and**

27 | **advertising injury** include injury arising out of false arrest, detention or

28 |

imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy; oral or written publication that libels or slanders a person or organization or disparages a person's or organization's goods, products, or services; use of another's advertising idea in your **advertisement**; infringing upon another's copyright or slogan in your **advertisement**; and discrimination or humiliation that results in injury to the feelings or reputation of a natural person. *See* Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section V.14, as amended by End. Nos. 6 (adding discrimination or humiliation coverage), 17 (deleting coverage for oral or written publication that violates a person's right of privacy), and 19 (altering infringement coverage).

63. The FAC does not allege injury arising out of false arrest, detention or imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy; use of another's advertising idea in your **advertisement**; or discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

64. The FAC also does not allege injury arising out of "oral or written publication that libels or slanders a person or organization or disparages a person's or organization's goods, products, or services." Primary Policy, Commercial General Liability Coverage Part, Section V.14.

65. Slander and libel are forms of defamation, Cal. Civ. Code § 44, which "is an invasion of the interest in reputation." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1180 (2000).

66. Slander is defamation that is communicated orally. Cal. Civ. Code § 46.

67. All of the FAC's allegations pertain to written rather than verbal communications. The FAC therefore does not assert a potentially covered slander offense.

68.     Libel is a written or printed form of defamation that "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.

69.     Based on the statutory definition and California case law, an essential element of libel is that the publication carries some defamatory or injurious meaning. *See, e.g.*, *Washer v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 21 Cal. 2d 822, 828 (1943) ("[I]f the words under no circumstances could convey a defamatory meaning, then no innuendo can make them defamatory."); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 646 (1999) (explaining that if the publication is not defamatory on its face, then the plaintiff must show that the reader understood the statement "in its derogatory sense"); *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217 (2017) ("If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all.").

70.     Although the Underlying Plaintiffs baldly allege that the listings will "injure their reputations," the allegations of the FAC do not pertain to statements about the Underlying Plaintiffs that are in any sense defamatory.  Instead, the listings are simple descriptions of the businesses that are either neutral or positive.  The publications thus lack any defamatory element and do not constitute libel.

71.     California courts "have understood disparagement, for purposes of commercial general liability insurance coverage, to mean a knowingly false or misleading publication that derogates another's property or business and results in special damages." *Hartford Cas. Ins. Co. v. Swift Distr., Inc.*, 59 Cal. 4th 277, 291 (2014).

72.     As explained above, the publications are either neutral or positive in their descriptions of each business.  The publications accordingly lack any derogatory element and do not constitute disparagement.

73.     The FAC also does not allege injury arising out of ClassPass's "infringing upon another's copyright or slogan in [its] **advertisement**."  Primary Policy, Commercial General Liability Coverage Part, Section V.14.

74.     As discussed in paragraph 27, an **advertisement** is "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."  Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section V.1. "Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement."  Ex. A., Commercial General Liability Coverage Part, Section V.1.b.

75.     The FAC does not include any allegations asserting or suggesting that ClassPass has infringed a copyright or slogan of the Underlying Plaintiffs in its **advertisement**.  Instead, the gravamen of the FAC is that ClassPass included the Underlying Plaintiffs' businesses on its website and app without permission.

76.     Therefore, the FAC does not assert a potentially covered **personal and advertising injury** offense.

77.     ClassPass, LLC thus cannot meet its burden to show that the FAC triggers the Policies' insuring agreements.

## **COUNT V**

### **For a Declaration that there is no coverage for the Lawsuit based on the Infringement or Violation of Intellectual Property Rights or Laws (the "IP Infringement Exclusion")**

78.     The CNA Insurers reallege and incorporate by reference Paragraphs 1-50 of this Complaint as if fully set forth herein.

79. The IP Infringement Exclusion bars coverage for infringement or violation of any "intellectual property right or legally protected expression, including but not limited to another's idea, slogan, trade dress, style of doing business, or unauthorized use of another's name or image, or any other intellectual property law, including but not limited to piracy, unfair competition or other similar practices."  Ex. A, Primary Policy, Commercial General Liability Coverage Part, End. No. 19.

80. The IP Infringement Exclusion "applies to the entirety of all allegations in any **claim** if the **claim** alleges the infringement or violation of any intellectual property right or law identified above, even if this insurance would otherwise apply to other allegations in the **claim**."  Ex. A, Primary Policy, Commercial General Liability Coverage Part, End. No. 19.

81. The IP Infringement Exclusion does not apply, however, "if the **claim's** only allegation is copyright or slogan infringement in **Named Insured's advertisement**."  Ex. A, Primary Policy, Commercial General Liability Coverage Part, End. No. 19.

82. The FAC alleges that ClassPass falsely lists businesses on its website and app without permission.

83. The FAC asserts various causes of action for violations of the Lanham Act and violations of state unfair competition laws.

84. The allegations in the FAC accordingly arise out of alleged "violation of intellectual property right[s] or legally protected expression," including the "unauthorized use of another's name or image" and violations of "unfair competition" laws.

85. As discussed in paragraph 75 above, the FAC does not allege that ClassPass infringed the businesses' copyrights or slogans.

86. The IP Infringement Exclusion therefore bars coverage for "the entirety of all allegations" in the Lawsuit.

**COUNT VI**

**For a Declaration that there is no coverage for the Lawsuit based on the Material Published Prior to Policy Period Exclusion (the "Prior Publication Exclusion")**

87.     The CNA Insurers reallege and incorporate by reference Paragraphs 1-50 of this Complaint as if fully set forth herein.

88.     The Prior Publication Exclusion bars coverage for "[p]**ersonal and advertising injury** arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the **policy period**." Ex. A, Primary Policy, Commercial General Liability Coverage Part, Section I, Coverage B.2.c.

89.     Under California law, the Prior Publication Exclusion bars coverage for pre- and post-policy-inception publications that are "substantially similar." *See, e.g.,* *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1183 (2000).

90.     Courts applying California law have determined that publications are "substantially similar" if they "carry out the same alleged wrong," focusing on the "relationship between the alleged *wrongful acts* manifested by those publications." *Street Surfing, LLC v. Great Am. E&S Ins. Co.*, 776 F.3d 603, 613 (9th Cir. 2014); *see also Kim Seng Co. v. Great Am. Ins. Co. of N.Y.*, 179 Cal. App. 4th 1030 (2009).

91.     Based on the allegations of the FAC, all of the allegedly false business listings that ClassPass publishes "carry out the same alleged wrong" because they affiliate with ClassPass businesses who have allegedly not agreed to partner with ClassPass.  The listings are accordingly "substantially similar."

92.     The FAC alleges that ClassPass has engaged in this scheme of posting false business listings since its founding in 2012, well before the Policies incepted on October 1, 2021.

93.     Because all the allegations in the FAC relate to publications that are the same or "substantially similar" to publications before the Policies incepted on October 1, 2021, the Prior Publication Exclusion bars coverage for the Lawsuit.

<u>COUNT VII</u>

**For declaratory relief and money judgment for reimbursement of amounts paid to defend the Lawsuit**

94.     The CNA Insurers reallege and incorporate by reference Paragraphs 1-93 of this Complaint as if fully set forth herein.

95.     VFIC agreed to pay defense fees and costs incurred by ClassPass, LLC in the Lawsuit, subject to a reservation of the right to seek repayment.

96.     Amounts paid by VFIC in connection with the Lawsuit constitute unjust enrichment to which ClassPass, LLC is not entitled.

97.     Because the Policies do not afford coverage for the Lawsuit, and under applicable law, VFIC is entitled to recoup amounts it has paid or pays hereafter under the Primary Policy in connection with the Lawsuit.

98.     Accordingly, VFIC requests a declaration that ClassPass, LLC is obligated to reimburse VFIC for amounts it has paid on behalf of ClassPass, LLC in connection with the Lawsuit and a money judgment against ClassPass, LLC in that amount.

WHEREFORE, the CNA Insurers respectfully request that this Court:

A.      Enter judgment that the Policies do not provide coverage for ClassPass, Inc. because it no longer exists and does not otherwise constitute an insured under the Policies.

B.      Enter judgment that the Policies do not provide coverage for Payal Kadakia because she does not constitute an insured under the Policies.

C.      Enter judgment that the Policies do not provide coverage for Fritz Lanman because he does not constitute an insured under the Policies.

D.   Enter judgment that the Policies do not provide coverage for the Lawsuit because the FAC does not allege any potentially covered **personal and advertising injury**, and the CNA Insurers therefore owe no duty to defend or indemnify ClassPass, LLC against the Lawsuit.

E.   Enter judgment that the Policies do not provide coverage for the Lawsuit because the IP Infringement Exclusion bars coverage for infringement or violation of any intellectual property right or legally protected expression, and the CNA Insurers therefore owe no duty to defend or indemnify ClassPass, LLC against the Lawsuit.

F.   Enter judgment that the Policies do not provide coverage for the Lawsuit because the Prior Publication Exclusion bars coverage for material first published prior to the inception of the policy, and the CNA Insurers therefore owe no duty to defend or indemnify ClassPass, LLC against the Lawsuit.

G.   Enter judgment that VFIC is entitled to reimbursement of any amounts paid by VFIC in the defense of the Lawsuit and a money judgment against ClassPass, LLC for that amount;

H.   Award the CNA Insurers their costs incurred herein; and

I.   Award the CNA Insurers all other relief to which they may be entitled.

VALLEY FORGE INSURANCE COMPANY'S AND THE CONTINENTAL INSURANCE COMPANY'S COMPLAINT

Dated: May 12, 2022

Respectfully submitted,

By: *Robert Christensen*

Robert C. Christensen, (SBN 151296)
robert.christensen@cna.com
CNA COVERAGE LITIGATION
GROUP
555 Mission Street, Suite 200
San Francisco, CA 94105
(415) 932.7018 (tel)
(866) 534.1036 (fax)

Daniel C. Streeter (SBN 229010)
Daniel.streeter@cna.com
CNA COVERAGE LITIGATION
GROUP
2 Park Plaza, Suite 400
Irvine, CA 92614
(949) 399.4945 (tel)
(949) 788.8980 (fax)

*Attorneys for Defendants Valley Forge*
*Insurance Company and The*
*Continental Insurance Company*

*Of Counsel*:

Richard A. Simpson (*pro hac vice* motion to be filed)
rsimpson@wiley.law
Leland H. Jones, IV (*pro hac vice* motion to be filed)
ljones@wiley.law
Elizabeth E. Fisher (*pro hac vice* motion to be filed)
eefisher@wiley.law
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000 (tel)
(202) 719-7049 (fax)

VALLEY FORGE INSURANCE COMPANY'S AND THE CONTINENTAL INSURANCE COMPANY'S
COMPLAINT